J-S02017-17

2017 PA Super 102

| CHINWEIFENU OKEKE-HENRY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| SOUTHWEST AIRLINES, CO. | |
| Appellee | No. 1410 EDA 2016 |

Appeal from the Order Entered April 1, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No: December Term, 2015 No. 1420

BEFORE: FORD ELLIOTT, P.J.E., STABILE, and MOULTON, JJ.

OPINION BY STABILE, J.:                    **FILED APRIL 13, 2017**

Appellant, Chinweifenu Okeke-Henry, appeals from the April 1, 2016 order entered in the Court of Common Pleas of Philadelphia County, granting judgment on the pleadings in favor of Appellee, Southwest Airlines Co. ("Southwest"). Following review, we vacate and remand.

Appellant filed a complaint on December 16, 2015, alleging she was injured when she was struck in the head by a suitcase carried by another passenger while boarding a Southwest flight in Denver, Colorado on December 16, 2013. In her Complaint, Appellant alleged that:

8. [Appellant's] injuries resulted from the actions and inactions of [Southwest], which were careless, negligent, or reckless in that [Southwest]:

a) failed to properly monitor and oversee the boarding process on its aircraft;

       b) failed to properly train its employees to protect its passengers' safety during the boarding process;

       c) failed to properly supervise its employees during the boarding process; and

       d) failed to otherwise ensure that its passengers would not be injured in the boarding process.

Appellant's Complaint at ¶ 8.

Southwest filed a responsive pleading denying Appellant's injuries were caused by Southwest and asserting various affirmative defenses, including preemption under the Federal Aviation Act ("FAA"), 49 U.S.C.A. § 40101 *et seq*. Southwest's Answer and New Matter, 1/25/16, at ¶¶ 8-9, 32-33.

On February 17, 2016, Southwest filed a motion for judgment on the pleadings, asserting the pleadings were closed in light of Appellant's failure to file a reply to Southwest's new matter and contending Southwest was entitled to judgment on the pleadings because Appellant's claims were preempted by the FAA. Motion for Judgment on the Pleadings, 2/17/16. Later that day, Appellant filed her reply to Southwest's new matter, "specifically den[ying] that [Appellant's] claims are barred or limited in any way." Appellant's Reply to New Matter, 2/17/16, at ¶¶ 32-33.[1]

_____

[1] Appellant suggests that her *de minimis* delay in filing the reply to new matter should not play any role in the disposition of the motion for judgment on the pleadings. It is clear from the record that neither the trial court nor Southwest contends otherwise. As Southwest notes, even if Appellant had

*(Footnote Continued Next Page)*

On March 7, 2016, Appellant filed a response in opposition to Southwest's motion for judgment on the pleadings, denying that her claims were preempted by the FAA, claiming the FAA's preemption did not prohibit state law remedies but merely required assertion of a standard of care under the FAA, and contending that she intended to file a motion to amend her complaint to reference the standard of care applicable under the FAA. Appellant's Response in Opposition, 3/7/16, at ¶¶ 1, 7, 13.

On April 1, 2016, the trial court granted Southwest's motion for judgment on the pleadings. As of that time, Appellant had not sought leave to amend her complaint.

On April 12, 2016, Appellant filed a motion for reconsideration, again contending that "the FAA's preemption does not prohibit other remedies under state common law; it only requires that claimants allege the violation of federal standards of care as established under the FAA." Appellant's Motion for Reconsideration, 4/12/16, at ¶ 12. Appellant also reiterated that she was in a position to file an amended complaint; that the filing of an amended complaint would remedy any defect in her complaint; and that she had indicated her desire to amend her complaint. *Id.* at 14-16. She argued that dismissal of her complaint was "an unduly severe and [] inappropriate course of action when merely alleging the appropriate standard of care in an

_(Footnote Continued)_ _____

timely filed her reply, Southwest would have proceeded with its motion as soon as the pleadings were closed.

amended complaint would remediate any defect alleged by [Southwest]." *Id.* at 19. She asked that the trial court vacate its order and allow her "the right to amend her complaint as requested" in her response in opposition to Southwest's motion for judgment on the pleadings. *Id.*, Prayer for Relief. However, at no time did Appellant seek leave to amend her complaint, nor did she identify the standard of care she would allege under the FAA.

By order entered April 18, 2016, the trial court denied Appellant's motion for reconsideration. This timely appeal followed. The trial court did not direct Appellant to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

The trial court issued an opinion on August 2, 2016, explaining that "[t]he decision as to whether a state cause of action is preempted by federal law is a question of law to be decided by the court." Trial Court Opinion, 8/2/16, at 3 (citation omitted). The trial court indicated that "[w]hile the courts have found that traditional state and territorial law remedies continue to exist for violation of those standards, the plaintiff must allege the violation of federal standard of care as established under the FAA." *Id.* (citing *Abdullah v. American Airlines, Inc.*, 181 F.3d 363, 371 (3d Cir. 1999)).[2] The trial court acknowledged Appellant's assertion that she could cure the failure to include the applicable federal standards by filing an

---

[2] In *Abdullah*, the Third Circuit found that the FAA and its implementing regulations preempted "the entire field of aviation safety[.]" *Id.* at 365.

amended complaint, "but [she] has failed to do so." *Id.* In light of its determination that Appellant's negligence claims were federally preempted, the trial court concluded that judgment on the pleadings was properly entered in favor of Southwest. *Id.*

Appellant presents the following question for our review:

1. Did the trial court commit an error of law when it granted [Southwest's] motion for judgment on the pleadings dismissing Appellant's claims in their entirety and denying Appellant an opportunity to file a motion to amend her complaint to cure a trivial defect which did not prejudice [Southwest] or otherwise affect the substantial rights of the parties?

Appellant's Brief at 4.

As this Court has recognized:

Entry of judgment on the pleadings is appropriate when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. Our scope of review is plenary and we will reverse only if the trial court committed a clear error of law or if the pleadings disclose facts that should be submitted to a trier of fact. We accept as true all well-pleaded allegations in the complaint.

*Kennedy v. Consol Energy, Inc.*, 116 A.3d 626, 631 (Pa. Super. 2015) (citations and quotations omitted).

As a preliminary matter, we observe that the question of whether the FAA preempts claims of negligence relating to boarding an aircraft is an issue of first impression in this Court. Our review of the case law has revealed no case in either this Court or the Pennsylvania Supreme Court addressing FAA preemption of state negligence claims under circumstances

even remotely similar to the case before us.[3]  As reflected above, the trial court looked to the Third Circuit's 1999 decision in **Abdullah**[4] and concluded that Appellant's claims were federally preempted.

In **Abdullah**, the Third Circuit concluded that the FAA's standards of care preempted the negligence *claims* of passengers injured due to in-flight turbulence, but that the FAA did not preempt state law *remedies*.  **Id.**, 181 F.3d at 375.  More recently, the Third Circuit concluded that the FAA's claim preemption was not without limits.  **Elassaad v. Independence Air, Inc.**, 613 F.3d 119 (3d Cir. 2010).  In **Elassaad**, a disabled passenger was injured while disembarking an airplane.  The court rejected the airline's contention that the claim was preempted by the FAA and the Air Carrier Access Act ("ACAA"),[5] which was passed in 1986 as an amendment to the FAA.  The court explained:

> Although we stated in **Abdullah v. American Airlines, Inc.**, 181 F.3d 363, 365 (3d Cir.1999), that the Aviation Act preempts

_____

[3] In **Shay v. Flight C Helicopter Service, Inc.**, 822 A.2d 1 (Pa. Super. 2003), which involved a helicopter crash that resulted in fatalities, this Court mentioned **Abdullah** in reference to the appellants' preemption issue but did not analyze preemption and found it waived in light of the appellants' failure to develop any argument on the issue.  **Id.** at 16.

[4] We recognize that decisions of the lower federal courts and courts of others states may have persuasive, but not binding, authority on this Court.  **See Gongloff Contracting, L.L.C. v. L. Robert Kimball & Assoc., Architects and Engineers, Inc.**, 119 A.3d 1070, 1078 n. 6 (Pa. Super. 2015).

[5] 49 U.S.C.A. § 41705 *et seq*.

"the entire field of aviation safety" from state regulation, we hold that the "field of aviation safety" does not include a flight crew's oversight of the disembarkation of passengers once a plane has come to a complete stop at its destination. **Abdullah** therefore does not control the instant case. We also hold that the Aviation Act and the regulations promulgated thereunder do not preempt state tort law with respect to such negligence claims.

*Id.* at 121. After analyzing the standard of care under the FAA, the court

determined:

[W]e conclude that the aircraft was not being operated for the purpose of air navigation at the time of Elassaad's accident, and thus that the standard of care provided by § 91.13(a)[6] did not apply to this situation. By the time of the accident, the aircraft had landed, taxied to the gate, and come to a complete stop; the crew had already opened the door and lowered the plane's stairs; and all of the passengers other than Elassaad had deplaned. [T]he statutory and regulatory definitions of "operate" state that a plane is only being operated, within the meaning of § 91.13(a), when it is being "use[d]" for "navigation," and the Aviation Act's definitions of "navigate aircraft" and "air navigation facility" demonstrate that the term "navigation" principally applies to the takeoff and landing of an aircraft, and the "piloting" that occurs during the flight. These definitions contemplate a flight crew's interaction with an aircraft and with passengers who are on the aircraft. By contrast, we conclude that a flight crew's oversight of the disembarkation of passengers—after a plane has finished taxiing to the gate, and its crew has opened the aircraft's door and lowered its stairs— does not constitute "operations for the purpose of air navigation."

*Id.* at 130 (emphasis added). Further:

The statutory and regulatory framework of the Aviation Act thus provides no evidence of any intent—much less a "clear and

_____

[6] 14 C.F.R. § 91.13(a) provides: "(a) Aircraft operations for the purpose of air navigation. No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."

- 7 -

manifest" intent—to regulate safety during disembarkation. In **Abdullah**, we concluded that, given the overwhelming number of relevant Aviation Act safety regulations, the Aviation Act preempted the field of aviation safety. Here, there is no indication that either Congress or the FAA intended that federal law would impose a legal duty in an area that is neither specifically regulated by federal law nor clearly governed by a general federal standard of care: the assistance provided to passengers during their disembarkation. Accordingly, we conclude that the Aviation Act and its safety regulations do not preempt state law standards of care in this negligence action.

**Id.** at 131.

We find that Appellant's claim is more akin to that in **Elassaad** than in **Abdullah**. The Southwest plane had not moved from the gate and was in the boarding process when Appellant was struck in the head by a suitcase carried by an unidentified passenger. Appellant does not suggest that she or the passenger had enlisted the assistance of a flight attendant, that the unidentified passenger was having any difficulty managing his carry-on bag, or even that the passenger was attempting to stow the bag in an overhead bin. There is no basis for concluding that the incident occurred in the course of the operation of the aircraft so as to come under the FAA's preemption umbrella. Consequently, we find the trial court erred in determining that Appellant's claims were federally preempted.

Having determined that the trial court erred in finding preemption, we next consider whether the court committed a clear error of law in granting judgment on the pleadings. Again, "[w]e accept as true all well-pleaded allegations in the complaint." **Kennedy**, 116 A.3d at 631.

As reflected in Paragraph 8 of Appellant's Complaint quoted above, Appellant alleged that she was injured because Southwest was negligent in failing to oversee the boarding process, in failing to train and supervise its employees with regard to the boarding process, and in failing to ensure the safety of passengers during boarding. Appellant's Complaint at ¶ 8. Absent the protection of preemption and accepting Appellant's allegations as true, it cannot be said at this juncture that Southwest's "right to succeed is certain and the case is so free from doubt that [a] trial would clearly be a fruitless exercise." ***Rourke v. Pennsylvania National Mutual Casualty Insurance Co.***, 116 A.3d 87, 91 (Pa. Super. 2015). (citation omitted)). Therefore, we are constrained to reverse the grant of judgment on the pleadings and remand to the trial court for further proceedings.

Order vacated. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.[7]

_____

[7] It merits mention that Appellant suggested for the first time in her Reply Brief that the FAA's general standard of care codified in 14 C.F.R. § 91.13(a) (**see** n. 6, ***supra***), is implicated in her case as is 14 C.F.R. § 121.589 relating to the size and stowing of carry-on baggage. Reply Brief at 1-2. She also, for the first time, suggested that her claims were not preempted by the FAA after previously conceding that they were and acknowledging that an amendment to her complaint was necessary to salvage her claims. ***Id.*** at 2-3. In doing so, she reversed the position taken not only in her response in opposition to Southwest's motion for judgment on the pleadings and her brief in support, but also in her motion for reconsideration and her brief in support, as well as in her merits brief filed with this Court.

*(Footnote Continued Next Page)*

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/13/2017</u>

_(Footnote Continued)_ ────────

In Southwest's Sur-Reply Brief, which was filed pursuant to our January 4, 2017 Order granting Southwest's application for leave to file a sur-reply brief to address waiver, Southwest asks us to find that Appellant's "belated identification of a purported violation of a federal standard of care and her attempt to reverse her position concerning federal preemption of state-law standards of care are waived." Southwest's Sur-Reply Brief at 1. Finding that Southwest's assertions have merit, we conclude that Appellant did not properly preserve the arguments she raised for the first time in her Reply Brief and, therefore, those arguments are waived. Nevertheless, we shall not ignore persuasive authority, such as **_Elassaad, supra_**, or fail to consider its possible application to this case.

Further, we recognize that Appellant conceded in her Reply Brief that the passenger with the offending suitcase was never identified. While that fact may ultimately result in Appellant's inability to prove her case against Southwest, our standard of review requires that her claims survive a motion for judgment on the pleadings.